**Meringolo & Associates, P.C.**
375 Greenwich Street
New York, New York 10013
(212) 941-2077 / (212) 202-4936 fax
www.meringololaw.com

June 13, 2018

**VIA ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *United States v. Jonathan Braun*, 10-CR-433 (KAM)

Dear Judge Matsumoto:

The following memorandum is submitted in support of Jonathan Braun (age 35) who pled guilty on November 3, 2011 to conspiracy to import marijuana into the United States, in violation of 21 U.S.C. §§ 952(a); 960(a)(1), and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), the former of which carries a ten-year mandatory minimum sentence. As explained below, Mr. Braun respectfully requests that the Court sentence him to a non-Guidelines sentence, or in the alternative, the lowest sentence statutorily possible. Because the United States Sentencing Guidelines are advisory, the Court is empowered to use a fluid standard in determining and imposing a sentence "no greater than necessary." 18 U.S.C. § 3553(a). Mr. Braun respectfully suggests that an analysis of the factors set forth in 18 U.S.C. § 3553(a) indicate that a non-Guidelines sentence is warranted.

By requesting a non-Guidelines sentence, neither Mr. Braun nor defense counsel seek to minimize the severity of his actions or deny his responsibility for the offenses committed. However, Mr. Braun's offenses represent much less than the sum of his character and history. Although Mr. Braun has a Guidelines sentence of 262 to 327 months' imprisonment, we respectfully ask the Court to impose a non-Guidelines sentence of ten years' imprisonment, the mandatory minimum sentence for conspiracy to import marijuana. We submit this sentence would be sufficient, but no greater than necessary, in consideration of his individualized circumstances.

**I.     JONATHAN BRAUN'S PERSONAL HISTORY**

Jonathan Braun (age 35) was born in Brooklyn, New York to Jacob and Helene Braun. Mr. Braun is one of three siblings. His older sister, Michelle (age 37), is a pharmacist, married with three children, and lives in Florida. His younger sister, Shannon (age 32), lives in Cleveland, Ohio, with her husband and child and works as a teacher.

1

Mr. Braun enjoyed a comfortable, middle-class upbringing in an Orthodox Jewish household and describes his family as very close-knit.

His family eventually moved to Staten Island, where he applied for early admission into the College of Staten Island. He earned 56 college credits but then stopped attending so that he could open his own business. Mr. Braun always remained employed as a young adult and dreamed of starting his own company. In 2002, Mr. Braun opened Central Cellular, a business in Staten Island that sold cellular phones and accessories. The business was owned and operated by Mr. Braun for seven years, until he sold the company to an employee.

Mr. Braun then moved to Los Angeles, California, where he lawfully invested in a medical marijuana dispensary. The business enjoyed success but Mr. Braun eventually sold his share back to his partner after nine months. At which point, Mr. Braun became involved in the illegal sale of marijuana which formed the basis of the present offense.

However, since the commission of the instant offense, Mr. Braun has turned his life around. In 2014, Mr. Braun married Miriam Hurwitz and they reside together in Staten Island with their two children, a daughter (age 4) and a son (age 2). They are currently expecting another child due in July 2018. Mr. Braun and his wife are both gainfully employed and dedicated to their family life.

Since his arrest and release on bail, Mr. Braun has consistently maintained employment. Currently, Mr. Braun works as a manager and risk analyst at a private lending company, Richmond Capital Group, LLC, where he has remained for the past five years. His employer is fully aware of the charges against him and remains supportive. Prior to his present employment, Mr. Braun worked as a senior funding specialist and director of sales and marketing at another lending company, Pearl Capital Rivis Ventures, LLC, that specialized in financing small businesses. Mrs. Braun is currently employed by this same company as a contractor and enjoys a successful and stable career in this field. Mr. Braun is dedicated to advancing his employment, earning potential, and creating a solid home for his family. As his current employer, Robert Giardina, attests:

> The Jonathan that I know is a dedicated, hardworking member of my staff, and has risen to the position of Senior Funding Manager. This company, of which I am the Managing Partner, is in the financial field and trust in our employees is not taken lightly. During the time that Jonathan has been an employee here, it is not uncommon that he works 12 hour days, and is always on time for work the next morning. I also know that in these past few years, that Jonathan has married, and has two beautiful children, whom I am sure will all, not only miss him but will be denied his guidance as they grow, if sent to prison.[1]

---

[1] *See* Exhibit A.

2

## II.   PROCEDURAL BACKGROUND AND OFFENSE LEVEL CALCULATION

Pursuant to a written plea agreement, on November 3, 2011, Mr. Braun pled guilty to two counts – 1) Conspiracy to Import Marijuana into the United States, in violation of 21 U.S.C. §§ 952(a); 960(a)(1); and 2) Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h). As per the plea agreement, Mr. Braun's Guidelines range is 262 to 327 months' imprisonment, based on Criminal History Category I and the following offense level calculation:

**Conspiracy to Import Marijuana**
Base Offense Level
(U.S.S.G. §2D1.1(a)(5)):                                               36

Use of an Aircraft to Import Controlled Substance
(U.S.S.G. §2D1.1(b)(2)(A)):                                            +2

Organizer or Leader of Criminal Activity
Involving 5 or More Participants
(U.S.S.G. §3B1.1(a)):                                                  +4

Adjusted Offense Level:                                                42

**Money Laundering Conspiracy**
Base Offense Level
(U.S.S.G. § 2S1.1(a)(1)):                                              38

Convicted under 18 U.S.C. § 1956
(U.S.S.G. § 2S1.1(b)(2)(B)):                                           +2

Organizer or Leader of Criminal Activity
Involving 5 or More Participants
(U.S.S.G. §3B1.1(a)):                                                  +4

Adjusted Offense Level:                                                44

Combined Adjusted Offense Level:                                       42
(U.S.S.G. §§ 3D1.2(C), 3D1.3(a))

Three-Level Acceptance of Responsibility Reduction
(U.S.S.G. § 3E1.1(a)-(b)):                                             -3

Total Offense Level:                                                   39

With zero criminal history points and in Criminal History Category I, the

Guidelines range for the above count is 262 to 327 months' imprisonment. For conspiracy to import marijuana, a mandatory minimum sentence of 120 months' imprisonment is required.

### III.  A NON-GUIDELINES SENTENCE IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, UNDER 18 U.S.C. § 3553(a)

In determining an appropriate sentence for Mr. Braun, the sentencing court is directed to "impose a sentence sufficient but not greater than necessary, to comply with . . . the need for the sentence to: (A) reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense, (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Guidelines are to be considered along with the sentencing factors under § 3553(a)—neither is given greater weight. *United States v. Crosby*, 397 F.3d at 113. To the contrary, giving greater weight to the Guidelines calculation or affording the Guidelines range a presumption of reasonableness runs the risk of violating the Supreme Court's instruction in *United States v. Booker* to make the Guidelines advisory only. In *Nelson v. United States*, 129 S. Ct. 890 (2009), the Court instructed:

> [T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. Instead, the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter.

*Nelson*, 129 S. Ct. at 891-92 (internal citations omitted).

Thus, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson*, 129 S. Ct. at 892 (emphasis in original). A district court should "ordinarily 'begin all sentencing proceedings by calculation of the applicable Guidelines range.'" *United States v. Preacely*, 628 F.3d 72, 79 (2d Cir. 2010) (citing *Gall v United States*, 552 U.S. 38, 46 (2007)). However, calculation of a defendant's advisory Guidelines range does not end the Guidelines' analysis. "The fact that a given guidelines range may apply does not always mean that it should." *United States v. Ingram*, 721 F.3d 35, 38 (2d Cir. 2013). The Second Circuit has also recognized that "[r]arely, if ever do the pertinent facts dictate one and only one appropriate sentence but rather experienced district judges may reasonably differ." *United States v. Jones*, 531 F.3d 163, 173 (2d Cir. 2008). Thus, although the Guidelines are an important factor in the sentencing analysis, they are advisory and the Court is generally free to impose a non-Guidelines sentence. *United States v. Gall*, 552 U.S. 38 (2007); *United States v. Booker*, 543 U.S. 220 (2005).

4

### A. A NON-GUIDELINES SENTENCE IS WARRANTED UNDER 18 U.S.C. § 3553(a)

In consideration of the factors enumerated under 18 U.S.C. § 3553(a), we respectfully submit a non-Guidelines sentence would be appropriate. The factors that must be considered by the Court when imposing a sentence according to 18 U.S.C. § 3553(a) are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed;
(3) the kinds of sentences available;
(4) the kinds of sentences and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the U.S. Sentencing Guidelines;
(5) any pertinent policy statement;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

The nature and circumstances of the offense are undoubtedly serious. Neither Mr. Braun nor the defense intends to suggest otherwise. But we also request the Court to consider Mr. Braun's personal history, including the strides he has made since his arrest to turn his life around. While by no means an excuse, Mr. Braun engaged in the instant criminal activity when he was young and admittedly foolish. Since his arrest and his nearly 18-month incarceration prior to being granted bail, Mr. Braun has recommitted his life to his family, career, and faith.

As to the need for the sentence imposed in the instant matter, the total Guidelines range of 262 to 327 months' imprisonment, with a ten-year mandatory minimum. Therefore, the kinds of sentences available to Mr. Braun are relatively limited. However, any downward variance from the Guidelines range would afford him the opportunity to take care of his family, continue his employment, and maintain an active role in society as a productive, law-abiding citizen.

Mr. Braun is aware of the need for the sentence to be imposed. But we respectfully submit that the four goals of sentencing as enumerated under 18 U.S.C. § 3553(a)(2) – retribution, deterrence, incapacitation, and rehabilitation – will already be met by the ten-year mandatory minimum. Moreover, while general deterrence and protection of the public are appropriate sentencing factors, harsher punishment does not generally result in greater deterrence. There is no correlation between harsher sentences and the reduction of crime. *See* Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) (concluding that "certainty and promptness of punishment are more powerful deterrents than severity. . . .

Imaginable increases in severity of punishments do not yield significant (if any) marginal deterrent effects."). Without minimizing the severity of the offenses, they are non-violent and limited in scope. The mandatory minimum sentence of 120 months' imprisonment is undoubtedly sufficient to punish and deter Mr. Braun and others from committing similar crimes.

Just from serving his time on the mandatory minimum, Mr. Braun would be incarcerated for the entirety of his children's formative years, including his unborn child's. Even if sentenced to a non-Guidelines sentence, retribution and punishment are unavoidable in this context. Mr. Braun is at a critical juncture in his life – married with three children – and is ready for a turning point. The mandatory minimum alone is a strong deterrent both individually and generally. In addition, the need to incapacitate and rehabilitate will just as likely be accomplished in 120 months as it would with additional time. The 18 months already served while awaiting bail has deterred Mr. Braun from committing further crimes, as evinced by his accomplishments since his release.

In consideration of the factors enumerated under 18 U.S.C. § 3553(a), we respectfully submit the mandatory minimum sentence required in this case would be more than sufficient.

### B. MR. BRAUN'S FAMILY CIRCUMSTANCES SHOULD BE CONSIDERED AT SENTENCING

Mr. Braun respectfully requests that his family circumstances be considered by the Court. The Second Court has consistently recognized the importance of family ties and responsibilities at sentencing. *See United States v. Galante,* 111 F.3d 1029, 1035 (2d Cir. 1997) (upheld a downward departure based on the defendant's exceptional family circumstances. "[I]f defendant were imprisoned the family unit would probably be destroyed, and defendant's wife and children relegated to public assistance . . . [and] removal of the father from this unit at this particular point in time would have a disastrous effect on the children in terms of possibilities of their education and upbringing."); *United States v. Johnson,* 964 F.2d 124, 129 (2d Cir. 1992) (upheld departure where defendant was the sole supporter of four young children); *United States v. Alba,* 933 F.2d 117, 1122 (2d Cir. 1991) (upheld departure where defendant supported his wife, two young children, and disabled father).

Mr. Braun is the head of the household and primary caretaker for his wife, two children, and soon-to-be-born third child. He plays an extremely hands-on and active role in their lives. His daughter receives occupational and speech therapy. His younger son as well receives special services at an early educational program after being diagnosed with delayed speech and motor skills. Thus, it is imperative for Mr. Braun to be as present as possible in his children's lives to ensure that they both receive the care they need. Likewise, Mr. Braun is expecting his third child in July, the month of his sentencing. Mr. Braun's children have inspired him to live, and continue to live, a productive, law-abiding life. Any time spent away from them will be undoubtedly detrimental, but the lowest sentence possible would ameliorate some of the harm caused by prolonged

incarceration.

> As Miriam Hurwitz, Mr. Braun's wife, aptly writes:
>
> We have discussed at times what he has done wrong and what he's been through and although he suffered he also accepts the fact that he has done things wrong at times. He has proven to take all the positives that can possibly remain after going through a negative time in his life. I personally get to witness it on a day to day basis and truly love him. I hope every one can see Jonathan for the person he really is and became, and allow him to have the chance at a healthy normal life with myself and our children. I'm very concerned at all times for his well being and pray each and every day that we will finally have a chance at having a normal marriage and companionship since we have yet to experience it like couples who have 100% of their freedom. I'm not going to make excuses or belittle what has gone on in the past, I just know he has learned his lesson and became stronger and grew up tremendously from this huge wake up call that he experienced in his life…
>
> He is phenomenal when it comes to our children. Our 4 year old daughter and 2 year old son rely on him to be dropped off at school and stand waiting for him at the door when he comes home each day from a long days work. Jonathan has been putting them to bed at night majority of the time, it may have started when he was not entitled or permitted to be outside of our home during non work scheduled hours, however even now when he is permitted to, he will always make sure to be home prior to the children's bed time so he does not miss the chance to put them to sleep each day. He has an amazing bond with our kids and is the best at calming them down when they have tantrums. We are expecting another baby in July, and he has gone with me to every doctors appointment. When I had to have surgery for my gallbladder, Jonathan made sure I had the best doctors and was up at night with me when I was in pain trying to make me feel better. He always helps me calm down when I am feeling anxious and always knows what to say to make me feel better. I need him to put this behind him fully and our children need him to as well, it is something we all have been looking forward too for quite an extended period of time.[2]

## V. ADDITIONAL INFORMATION FROM FAMILY AND FRIENDS

The totality of the circumstances, including Mr. Braun's character and the nature and circumstances of the offense, may be taken into account in reaching a determination as to the appropriate sentence. *See* John M. Walker, Jr., *Loosening the Administrative Handcuffs: Discretion and Responsibility Under the Guidelines*, 59 Brook. L.Rev. 551

---

[2] *See* Exhibit B.

(Summer 1993). For this reason, these additional letters are attached as further supporting documents for the Court's review and consideration.

Mr. and Mrs. Jacob Braun, Mr. Braun's parents, write:

In the last 8 years we have seen a large part of Jonathan change. He has become a success in business and at his job and works hard from morning to night to support his family. He is a terrific dad and husband and he loves the family that he has created with his wife Miriam. It would be terrible if his sweet children would not have him in their life. He is a good man and deserves a chance to be free to take care of his family. Jonathan has a baby due in July and it would be a terrible shame if he could not be there to support his wife and meet his new baby. They need him and we are at your mercy begging for you to show compassion for Jonathan Braun. We know if given the chance he will show that he will be a model citizen in the community. Please give him this chance and set him free.[3]

Mr. Braun's sister, Shannon Braun Miller, writes:

My name is Shannon Braun Miller and I am Jonathan's younger sister. We were always very close growing up not only because we were a year a part but because Jonathan was always there looking out for me. Jonathan was and is the brother that every girl needs. He continues to want only whats best for my sister and I, along with the rest of the family. Even after I got married and had a family of my own Jonathan remained a big part in my life. When my son was just 10 months old I had a stroke and Jonathan was the first at the hospital and would not leave. He remained right there by my side and made sure everything would be okay.
I understand that people make mistakes and Jonathan made some mistakes in life. This has not taken away from his unbelievable character as a person. He has stood by his family and started a new life of rebuilding himself. Jonathan started a family of his own and I would love to see him get a second chance to be able to continue to be there for his wonderful wife and two beautiful children with one on the way. Jonathan is an amazing husband and father who supports his family and will continue to do what is right and in his families best interest.[4]

Sholom Hurwitz, Mr. Braun's father-in-law, writes:

He is raising a beautiful family, he takes excellent care of them and they are his life. He thinks about his wife and children 24/7 as his Father in Law I see it all the time. I must say that since the first time I met Jonathan until now, he is an extremely excellent and caring husband and an

---

[3] *See* Exhibit C.
[4] *See* Exhibit D.

excellent father to his children. Jonathan is looking forward to the birth of his new baby soon. He is accepted by my whole family and we all love him. He has been a fine man in his community, synagogue and with his neighbors. Please, Dear Honor, there is a wonderful growing family here. His wife and children need their husband and father.[5]

David Feder, Mr. Braun's childhood friend, writes:

I have known Jonathan for over 30 years, and I can assure you that the subject circumstances which Jonathan has been implicated in, are not indicative of the kind of person he truly is. Jonathan made a terrible mistake, for which he is tremendously sorry, and I can only hope that will heavily on your mind when you make your decision. Jonathan has been working to make amends for his infractions, which is evident by his transitioning into traditional family life as a committed husband, and proud father of two children. He deeply regrets his past actions which he now looks back on with distain, and embarrassment. He is deeply remorseful, and only wants to do what he can to at least try to make things better.[6]

Mr. Braun's family friend, Toby Steltzer, writes:

I can say with true certainty that he is a very fine person that possesses good traits, I don't just say this as words. He has spent countless hours in my own home over the years so I have had the chance to know the real Jonathan. He has always been a loving and caring human being and is always kind to everyone. The love and devotion to his family is rarely something one sees in a teenager. His respect for his parents and especially his elderly grandmother Sophie with whom he was very very close was very heartwarming to see. Unfortunately, Grandma Sophie spent her last year's visiting Jonathan in prison and she passed away in her 90's before he was released, an incident that heart-broke and devastated him.[7]

Rabbi Moshe Katzman, Mr. Braun's rabbi, writes:

I have known Jonathan Braun for many years and have had many opportunities to counsel him since his release from prison. I believe that despite his past mistakes, Jonathan is a good person. He has married and is raising a family as a good parent and supportive spouse. I believe that Jonathan will be a useful and a law abiding citizen given the chance.

---

[5] *See* Exhibit E.
[6] *See* Exhibit F.
[7] *See* Exhibit G.

Jonathan has pursued higher education, is employed and continues to seek mentoring and assistance to continue his rehabilitation.[8]

Leor Moshe, Mr. Braun's best friend, writes:

I can attest to the court that outside of the instant offense, Jonathan is a man of good character; he is community-oriented and dedicated to his family. He is a hardworking person who often goes out of his way to help others. As a friend, I have known him to be a motivated person whose positive attitude and work ethic are highly contagious. He is a good father and husband who takes full responsibility of his family. I am aware that he likes to spend time with his kids and they may not have the psychological strength to handle separation from their father. Jonathan has expressed great remorse concerning this issue and I have never seen him with such a remorseful countenance.[9]

Sean Mirmelli, Mr. Braun's friend, writes:

I do not say this lightly that I am jealous of what Jonathan has accomplished in the last few years. A lesser man would have thrown in the towel, or searched for an easy way out, given the long-term uncertainty. I do not believe that I would have been capable of accomplishing what Jonathan has done nor do I believe that I would have actually survived. I have had the privilege to be there at Jonathan's wedding and to see him as a father. The world is a better place with Jonathan firing on all cylinders and I will look forward to the future and the positive influence that I know Jonathan will be as a son, brother, friend, uncle, husband, and, most importantly, now as a father.[10]

Joan Weissman, Mr. Braun's neighbor, writes:

As a next door neighbor of Mr. and Mrs. Jacob Braun I have had a tremendous amount of time to observe the wonderful transformation that Jonathan Braun has gone through under extremely arduous and emotionally trying times. Jonathan has worked continuously to be a good husband, friend and now father of two. With his tenacity and perseverance he has managed to establish himself in the business world as a true professional and a leader to others in his own business community.
Jonathan has always held family as the most important part of life. And now with his own family growing and having the opportunity to partner with his wife and mentor to his children his happiness is always evident.[11]

---

[8] *See* Exhibit H.
[9] *See* Exhibit I.
[10] *See* Exhibit J.
[11] *See* Exhibit K.

10

Benjamin Miller, Mr. Braun's brother-in-law, writes:

I have seen Jonathan's life evolve; he has become a settled man and has become a family man. His wife and children are most important to him. Jonathan works hard daily to provide for his family. His goal is to be a good husband and father. Although Jonathan has made his share of mistakes, he has taken his life and turned it around. He has worked hard on becoming rehabilitated and is an honest, hard-working individual.[12]

Judy and Dov Moshe write:

I am writing this letter to ask of you to try be lenient when you look over the case of Jonathan Braun. He is an amazing young man, who has been like a son to us. Sometimes people make mistakes and he has learned from this. We all make mistakes. As a young boy he was fun and loving. As a young man he is a loving father, husband, son and friend. He has a loving strong family and friends that support him in every way.[13]

Rabbi Yaakov Lehrfield, of the Young Israel of Staten Island, writes:

I have known Jonathan Braun for twenty years and have had many opportunities to counsel him while he was incarcerated and since his release from jail…Jonathan is employed full time and continues to get counseling towards his growth and full rehabilitation. I am always available to Jonathan for advice and encouragement to ensure his continued growth in society.[14]

## CONCLUSION

For the foregoing reasons, we respectfully request that in consideration of the applicable 10-year mandatory minimum, a non-Guidelines term of imprisonment would be sufficient, but not greater than necessary.

Thank you for your consideration of this submission.

Respectfully submitted,

_____/s/_____
John C. Meringolo, Esq.

CC: All counsel (via ECF)

---

[12] *See* Exhibit L.
[13] *See* Exhibit M.
[14] *See* Exhibit N.