UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------- X
UNITED STATES OF AMERICA,

                                    **MEMORANDUM AND ORDER**

     -against-                      10-CR-433 (KAM)


JONATHAN BRAUN,

                    Defendant.
----------------------------------- X

**MATSUMOTO, United States District Judge:**

          Defendant Jonathan Braun ("Mr. Braun" or "defendant")

has filed a motion, or more appropriately, a petition, pursuant

to 28 U.S.C. § 2255 ("§ 2255") to vacate his sentence based on

ineffective assistance of counsel (the "Motion" or "Mot.").[1]  In

support of the Motion, Mr. Braun contends that his counsel for

purposes of the criminal sentencing, John Meringolo, Esq. ("Mr.

Meringolo") and Anjelica Cappellino, Esq. ("Ms. Cappellino")

(together, "sentencing counsel"), were ineffective in responding

to three anonymous letters that were submitted to the court in

advance of sentencing.  (ECF No. 174-1, Memorandum in Support of

28 U.S.C. § 2255 Motion to Vacate Sentence ("Mem.") 2-3.)

Further, Mr. Braun contends that sentencing counsels' alleged

shortcomings caused the court to rely on the unrefuted

---

[1] The instant Motion was filed under Mr. Braun's criminal case, No. 10-CR-433.
Generally, a petition pursuant to 28 U.S.C. § 2255 is filed as a separate
civil action.  The court will treat Mr. Braun's instant application as a §
2255 petition, but will employ his description of his application as a
"motion."

1

allegations contained within those anonymous letters in imposing a 10-year sentence of imprisonment, which defendant asserts is "unusually heavy. . . ." ███████████████ (*Id.* at 2.)

Mr. Braun has retained new counsel, Marc Fernich, Esq., in connection with the instant Motion, as well as his pending appeal, *United States v. Braun*, 19-CR-1684, before the Second Circuit. (ECF No. 8, Notice of Appearance as Additional Counsel, dated 7/1/2019.) Notably, Mr. Meringolo, whose alleged ineffective assistance of counsel resulted in the instant Motion, is listed as lead counsel of record for the appeal. (ECF No. 7, Acknowledgement and Notice of Appearance, dated 6/24/2019.) On June 6, 2019, Mr. Braun timely filed his notice of appeal to the Second Circuit. (ECF No. 165, Notice of Appeal.) On September 13, 2019, the Second Circuit granted Mr. Braun's motion to hold the appeal in abeyance pending the resolution of the instant Motion, and he was granted leave to file his motion to hold the appeal in abeyance under seal. (*United States v. Braun*, 19-CR-1684, ECF No. 22, Motion Order.) For the reasons set forth below, Mr. Braun's motion is respectfully **denied**.

## BACKGROUND

### I. Procedural Background

Mr. Braun was arrested pursuant to a warrant on May 26, 2010, in Staten Island, New York, and pled guilty on

November 3, 2011 to Counts One and Six of a sealed six-count
superseding indictment ("Indictment"), charging Mr. Braun with
(1) conspiracy to import 1000 kilograms or more of marijuana and
(2) money laundering conspiracy to promote the carrying on of
specified unlawful activity, to wit: narcotics trafficking, in
violation of 21 U.S.C. §§ 952(a), 960(a)(1), 963, 960(b)(1)(G),
§ 841, *et seq.*, and 18 U.S.C. § 1956(a)(1)(A). (ECF No. 48,
Indictment; ECF No. 39, Plea Tr. 29-32; ECF No. 133, Presentence
Investigation Report ¶ 15.)  Mr. Braun allocuted to conspiring,
with others, to import 10,000 kilograms of marijuana from Canada
into the United States, including the Eastern District of New
York, from November 2007 to May 2010, as well as conspiring,
with others, to launder the proceeds from narcotics trafficking
in order to avoid law enforcement detection. (ECF No. 39, Plea
Tr. 29-32.)  Pursuant to Mr. Braun's agreement with the
government ("Agmt."), he consented to forfeiture of assets,
which he agreed constituted property "involved in," "derived
from," and/or traceable to property connected to his violations
of 21 U.S.C. § 963 and 18 U.S.C. § 1956, (Agmt. ¶ 9,): (a)
$477,565.00 in United States currency seized on May 11, 2009
from his stash house; (b) $77,000.00 in United States currency
seized on May 26, 2010 from his residence; (c) $504,100.00 in
United States currency seized on February 24, 2011 from multiple
safety deposit boxes controlled by Mr. Braun; and $32,500.00 in

3

United States currency voluntarily surrendered on April 1, 2011. (Agmt. ¶ 8.)

Additionally, pursuant to his agreement, Mr. Braun agreed that his United States Sentencing Guidelines ("Guidelines") and statutory mandatory minimum sentence should be calculated based on a drug type and quantity of at least 10,000 kilograms of marijuana. (Agmt. ¶ 2.) ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████ ██████ ██████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████████ (Agmt. ¶ 6 (emphasis added).) Notably, defendant did not waive his right to appeal the sentence if he believes the court made an error in imposing the sentence. (ECF No. 39, Plea Tr. 26:16-21.)

On February 28, 2018, the Probation Department filed its Presentence Investigation Report ("PSR") regarding Mr. Braun, which provided information concerning the offense conduct; offense level calculations; defendant's criminal history; defendant's personal and family characteristics;

physical and mental health conditions; employment and educational records; financial status; and sentencing options. (ECF No. 133, PSR.) In addition, on February 28, 2018, the Probation Department filed a Sentence Recommendation, in light of the sentencing goals set forth in 18 U.S.C. § 3553(a), in which the Probation Department recommended a sentence of 60 months in the Custody of the Attorney General on each count to run concurrently; a $100,000 fine; and a two-year term of supervised release with certain special conditions. (ECF No. 133-1, U.S. Probation Office Sentence Recommendation ("Prob. Rec.").) On September 20, 2018, the Probation Department filed an Addendum to the PSR, providing additional information concerning Mr. Braun's personal history, income tax returns, financial statement, and supporting documentation. (ECF No. 140, Addendum to the Presentence Report.)

On June 13, 2018, Mr. Meringolo filed defendant's sentencing memorandum and various attachments. (ECF No. 136, Sentencing Memorandum and Attachments ("Def. Sent. Mem.").) In the defense sentencing memorandum, Mr. Meringolo requested a below-Guidelines sentence and specifically asked the court to impose "a non-Guidelines sentence of ten years' imprisonment, the mandatory minimum sentence for conspiracy to import marijuana" and submitted that such a sentence "would be sufficient, but no greater than necessary, in consideration of

[defendant's] individualized circumstances." (*Id.* at 1.)

Moreover, Mr. Meringolo wrote that "any downward variance from

the Guidelines range would afford [defendant] the opportunity to

take care of his family, continue his employment, and maintain

an active role in society as a productive, law-abiding citizen."

(*Id.* at 5.)

## II.  **Anonymous Letters and Subsequent Sentencing Adjournments**

In August 2018 and April 2019, three anonymous letters[2]

were submitted by member(s) of the public to the court for

consideration in advance of Mr. Braun's sentencing.[3]  Two days

after the first of these letters was filed, the government

requested that the court adjourn the sentencing hearing then

scheduled for September 20, 2018, to a date in mid-January 2019,

in order to allow the government to "investigate the veracity of

the information" contained in the anonymous letter regarding

"allegations of criminal activity involving the defendant."

(ECF No. 145, Letter re: Adjournment as to Jonathan Braun, dated

8/29/2018.)  The court granted the government's request and

adjourned sentencing until January 24, 2019.  On December 21,

---

[2] Submissions on the docket are available to counsel for the parties at the email addresses they list at the time of their appearance on the docket.
[3] As one anonymous letter noted, "I believe the sentencing judge and prosecution should look into these matters. I also believe these things should be taken into consideration when [Mr. Braun] is sentenced."  (ECF No. 146, Letter as to Jonathan Braun from Yellowstone Capital, dated 8/27/2018.) The author also wrote, "I used our company's old address as the return address, don't bother writing back. Start the process you will find I am telling the truth."  (*Id.* at 3.)

2018, the government again requested that the court adjourn
sentencing, from January 24, 2019 to a date in mid-May, in order
to allow the government further time to investigate the complex
alleged claims and determine "whether it will impact the
government's position at sentencing."  (ECF No. 150, Letter re:
Adjournment of Sentencing as to Jonathan Braun, dated
12/21/2018.)  Thus, the court granted the government's request
and rescheduled the sentencing hearing for May 9, 2019.  (Dkt.
Order dated 1/7/2019, Order re Sealed Letter re: Adjournment of
Sentencing as to Jonathan Braun.)  Defendant's sentencing
counsel do not deny that they received the docket submissions
requesting adjournments of Mr. Braun's sentencing and orders
granting those requests.

On April 23, 2019, two additional anonymous letters
were filed with the court, each containing troubling allegations
concerning Mr. Braun's behavior while out on bond.  (ECF No.
154, Anonymous Letter with a civil docket as to Jonathan Braun,
dated 4/23/2019; ECF No. 155, Anonymous Letter as to Jonathan
Braun, dated 4/23/2019.)  On May 2, 2019, Mr. Meringolo
requested a rescheduling of Mr. Braun's sentencing from May 9,
2019 to an adjacent date in early May.  (ECF No. 158, Motion to
Continue Sentencing Rescheduling, dated 5/2/2019.)  That same
day, the court granted defendant's motion to continue
sentencing; due to the court's unavailability on the dates

proposed by the parties, the court rescheduled sentencing for
May 23, 2019.  (Dkt. Order dated 5/2/2019.)  On May 17, 2019,
the government requested that the court adjourn the sentencing
to a date thereafter due to counsel's travel conflicts.  (ECF
No. 160, Letter re: Adjournment of Hearing, dated 5/17/2019.)
Later that day, the court reset sentencing for May 28, 2019.
(Dkt. Order dated 5/17/2019.)  Again, there is no assertion by
defendant's counsel that the adjournment requests and orders
were *not* received via ECF.

### III. Defendant's Sentencing

On May 1, 2019, the government filed its sentencing
memorandum. ████████████████████████████████████████████
████████████████████████████████████████ (ECF No. 156,
Sentencing Memorandum ("Gov. Sent. Mem.") 1-4.) ████████████
████████████████████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

████

The government also addressed the "additional unlawful conduct by Braun" as was alleged in the anonymous letters. The government added that Mr. Braun "has been linked in the press to alleged predatory lending practices." (*Id.* at 3-4, citing Zeke Faux and Zachary R. Mider, "Sign Here to Lose Everything, Part 4: Business-Loan Kingpin," *Bloomberg*, Dec. 3, 2018.) The government indicated that it had conducted an investigation of Mr. Braun's alleged conduct over the past several months and, "[a]t this time, the government does not have sufficient information to conclude that Mr. Braun has committed additional criminal conduct of which the court should be advised, nor that he has committed any additional conduct ██████████████████████

███████████████████████████████████████

████████████████████     ███████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

███████████████████████████████

On May 28, 2019, the parties appeared for Mr. Braun's sentencing hearing. The court accepted Mr. Braun's plea of guilty to Counts One and Six, finding that his plea was knowing and voluntary and based upon a full understanding of his rights and the consequences of his plea, and that there was a factual basis for his plea of guilty. (ECF No. 174-4, Ex. C, Transcript of Criminal Cause for Sentencing before the Honorable Kiyo A. Matsumoto ("Sentencing Tr.") 6, dated 5/28/2019.) Mr. Braun stated he did not wish to have a *Fatico* fact-finding hearing. (*Id*. at 8.) The government then raised the additional conduct alleged in public reporting and the anonymous letters to the court. In response, the government stated that it "takes all of [the allegations of additional conduct] very seriously" and that it had been investigating those allegations. (*Id*. at 11.) Further, "based on the facts [the government has] been able to gather, there's nothing further for the Government to the [sic] present to the Court that would either be additional criminal conduct or otherwise materially impact sentencing." (*Id*.)

The court inquired of the government about an individual who had filed a lawsuit alleging that Mr. Braun "intentionally shoved him off a two-story balcony and he sustained very serious injury." (*Id*.) The court noted that this allegation was "very concerning" and asked whether the government had spoken to the plaintiff in that case, to which

the government responded that it did not know, but that the FBI
had been investigating that allegation. (*Id.* at 11-12.) The
government stated that the "FBI has not gathered any additional
fact[s] such that we'd be prepared to present a *Fatico* hearing
on this or otherwise proceed in a different manner at
sentencing." (*Id.* at 12.) The court also inquired about a
separate lawsuit, *Richmond Capital Group, LLC v. Congregation
Shule, Inc.*, filed in Dutchess County Supreme Court under Index
No. 2018-51838, in which an affiant stated that Mr. Braun
threatened to beat the affiant because he fell behind in
payments on a business debt. (*Id.* at 12-13.) The court also
inquired about a few other incidents regarding "alleged threats"
by Mr. Braun towards other individuals and asked whether the
government had spoken to those individuals. (*Id.* at 13-14.)
Ms. Cappellino did not address the alleged threats or other
alleged conduct by Mr. Braun raised by the anonymous letters.
(*Id.* at 13-15.) Though the court referred to the anonymous
reports of Mr. Braun's behavior in his current private lending
business as "very serious allegations," the court also noted
that Mr. Braun has "not been charged with other crimes in the
years since he was released on bond." (*Id.* at 33, 35.)

    The court stated that it had considered various
factors, including, *inter alia*: the government's position
regarding the authorized and unopposed sentencing options;

sentencing counsel's specific request for a ten-year sentence, which would fall far below the advisory Guidelines range of 324 to 405 months; Mr. Braun's personal characteristics and circumstances; Mr. Braun's aggravating leadership and organizer role in the offense; Mr. Braun's use of sophisticated means to distribute up to $6 million of marijuana per week and launder $14 million; and Mr. Braun's use of violence and threats of violence in committing the offense, which distinguished him from others. (*Id.* at 35-36.) The court ultimately sentenced Mr. Braun to the requested mandatory ten-year term of imprisonment on Count One and a three-year term of imprisonment on Count Six, to be served concurrently. (ECF No. 174-4, Ex. C, Sentencing Tr. 36, dated 5/28/2019.) Given that Mr. Braun was arrested after he previously had fled to Canada and then Israel, (ECF No. 133-1, Prob. Rec. 2,) and was in custody from May 26, 2010 to November 4, 2011, the court ordered that defendant receive credit for time in custody against his sentence. (ECF No. 174-4, Ex. C, Sentencing Tr. 36.) With regard to supervised release, the court sentenced Mr. Braun to a five-year term for Count One and a three-year term for Count Six, to be served concurrently; thus, Mr. Braun received a five-year term of supervised release. (*Id.*) Finally, the court sentenced defendant to pay a $100,000 fine obligation, according to the

payment plan specified by the court, as well as a $200 mandatory special assessment.  (*Id*. at 38-39.)

**LEGAL STANDARDS**

## I.    28 U.S.C. § 2255

A prisoner in federal custody may challenge the validity of his sentence by filing a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); *see also Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) (citing 28 U.S.C. § 2255).

Relief under § 2255 is generally available only "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a miscarriage of justice.'"  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  The Second Circuit has recognized the importance of "narrowly limiting the relief permitted under § 2255" to preserve "respect for the finality of criminal sentences, [and] the efficient allocation of judicial resources."  *Id*.  Section 2255 petitions

13

must be filed in the district court "which imposed the sentence" being challenged.  28 U.S.C. § 2255(a).

## II.  <u>Ineffective Assistance of Counsel</u>

Ineffective assistance claims are governed by the standards articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694, *superseded on other grounds by* Antiterrorism and Effective Death Penalty Act of 1966, Pub. L. No. 104-132, 110 Stat. 124; *accord United States v. Abad*, 514 F.3d 271, 275 (2d Cir. 2008) (quoting *Strickland*, 466 U.S. at 688, 694); *see also Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002).

With respect to the first prong, counsel's function in a criminal case includes advocating defendant's cause, consulting with defendant on important decisions, and keeping defendant informed of important developments in the course of the prosecution.  *Strickland*, 466 U.S. at 688.  As *Strickland* makes clear, there is no "checklist" for judicial evaluation of attorney performance; rather, the performance inquiry in an ineffectiveness claim must be whether counsel's assistance was

14

reasonable considering all the circumstances. *See id.*; *see also Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Courts keep in mind that "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). In assessing performance, courts are directed to "eliminate the distorting effects of hindsight," and apply deference to counsel's judgments. *Id*. (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)).

With respect to the second prong, a petitioner must show that but for the attorney's deficient performance, there is a "reasonable probability" that the result would have been different. *Strickland*, 466 U.S. at 693. On the one hand, a "reasonable probability" of prejudice requires more than a mere showing that the errors had "some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693. On

the other hand, a petitioner need not establish that the attorney's deficient performance "more likely than not" altered the outcome. *Gonzalez*, 722 F.3d at 135 (citations omitted) (reversing the district court's finding of no prejudice under the second prong of *Strickland* because the district court erroneously applied a standard at least as demanding as more-likely-than-not).

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court specifically noted in *Strickland* that the federal district courts need not address both components if a petitioner has failed to establish either one:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.

Thus, the failure to establish either prong is fatal

to an ineffective assistance claim. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) ("The IAC claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong."); *United States v. Brown*, 2019 WL 4602892, at *3 (E.D.N.Y. Sept. 23, 2019). Indeed, the *Strickland* standard is "highly demanding," and "rigorous," and the petitioner bears the burden of proving that both *Strickland* prongs are met. *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986); *see also Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001) ("The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard.").

## DISCUSSION

On October 3, 2019, Mr. Braun filed the instant Motion in order to challenge his sentence based on his claim of ineffective assistance of counsel. On November 18, 2019, the government filed its response to the Motion. The government "does not concede the merits of the defendant's claims – either that the conduct constitutes ineffective assistance or that the Court actually considered the letters as a basis for the sentence." (ECF No. 179, Response to Mot.("Gov. Response").) Nevertheless, the government does not object to a resentencing of defendant, in light of the factual representations about sentencing counsel's conduct and the additional facts presented

about the contents of the letters.  (*Id.*)

Because neither party has disputed the PSR's Guidelines calculations of 262 to 327 months in custody, or the court's independent Guidelines calculations of 324 to 405 months in custody, the court will not address those issues in the present Order.  Instead, the court focuses its inquiry upon the issues raised by the Motion: (1) whether sentencing counsel's representation "fell below an objective standard of reasonableness"; and, if so, (2) whether, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

## I.    **The First *Strickland* Prong Is Met**

First, the court evaluates Mr. Braun's Motion and the accompanying declarations, which contain factual representations concerning sentencing counsel's conduct, in order to determine whether Mr. Braun has demonstrated that sentencing counsel's representation fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688, 694.  Mr. Braun contends that his sentencing counsel "failed to adequately monitor Braun's docket or keep abreast of important case developments, leaving him and his client unaware that anonymous letters alleging serious misconduct by Braun had been filed with the Court."  (Mot. 13.)  Mr. Braun also asserts that Mr.

18

Meringolo, lead sentencing counsel, was deficient in that he "failed to seek a further adjournment to accommodate his unavailability" at the sentencing, instead "delegat[ing] the critical sentencing hearing to a young associate attorney [Ms. Cappellino] substantially unfamiliar with the case and similarly unaware of the anonymous letters." (*Id.*)  Lastly, Mr. Braun stated that "the junior associate failed to respond or confront" the anonymous letters and the allegations contained therein when they surfaced during the sentencing hearing by "neglect[ing] to request copies of the letters for examination, object to their consideration or seek a continuance to explore and address their veracity."  (Mot. 14.)

The court notes that Mr. Braun's factual representations are largely supported by the Declarations submitted by Mr. Meringolo and Ms. Cappellino.  In particular, Mr. Meringolo stated in his Declaration that he was "unaware of the anonymous letters," one of which was filed in August 2018, approximately 10 months prior to sentencing, because copies were forwarded to an email address that he does "not normally use." (ECF No. 176, Meringolo Decl., dated 10/3/2019.)  Yet, Mr. Meringolo does not explain why the email address, which he entered on the docket and used to receive the government's submissions and the court's orders that were docketed in this case, did not provide him with the ability to be aware of the

anonymous letters filed on the docket.

Applying the first *Strickland* factor, the court finds that sentencing counsel did not take reasonable steps to stay informed of case developments, *i.e.* the anonymous letters, prior to defendant's sentencing hearing. Mr. Braun's counsel had a duty to enter an effective email address and to check the docket in the cases in which he has appeared.[4] *See, e.g.*, *In re WorldCom, Inc.*, 708 F.3d 327, 338-39 (2d Cir. 2013) (finding that an "attorney[] appearing in cases assigned to the ECF system . . . accept[s] the obligation not only to notify the court if his email address changed, but also to update the ECF system himself"); *see also* Maintaining Your CSO Account, https://img.nyed.uscourts.gov/files/local_rules/Maintaining_Your_CSO_Account.pdf.

Mr. Braun, however, has cited no case holding or finding that the failure of defense counsel to review all docketed submissions in advance of sentencing constitutes ineffective assistance, and the court has found no such case. Nonetheless, the court finds that sentencing counsel's asserted failure to monitor the docket for developments for approximately 10 months, or to modify his ECF email address, falls below an

---

[4] Though Mr. Meringolo now asserts that he was unaware of the anonymous letters because the letters were sent to an email address that he "do[esn't] normally use," this email address was entered by sentencing counsel when he appeared in the case, and he does not assert that he failed to receive any of the other multiple entries on the docket.

objective standard of reasonableness.  Moreover, the court
agrees that sentencing counsel's lapse may have cost Mr. Braun
the opportunity to confront the anonymous letters' factual
allegations prior to sentencing and dispel any concerns that the
government or the court could have raised, even though these
letters were investigated by the government, were found not to
present any sentencing issues, and did not factor into the
court's sentencing decision.  The court had been assured by the
government that its investigation of the letters did not yield
information that would cause the government to invoke any
remedies under its agreement with Mr. Braun or to present
evidence in a *Fatico* hearing.

     With respect to the other ineffective assistance
allegations, the court finds that Mr. Braun has not shown that
Mr. Meringolo's decision not to seek an adjournment of
sentencing so that he could attend the sentencing himself, and
Ms. Cappellino's decision not to seek a continuance of
sentencing, fell below an objective standard of reasonableness.
*Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting
*Strickland*, 466 U.S. at 690).  Far from being the unseasoned
"junior associate" as repeatedly characterized in defendant's
Motion, Ms. Cappellino graduated from law school in 2011, and
the New York State Unified Court System shows that she was
admitted to the bar in New York state in 2012.  (ECF No. 177,

Cappellino Decl. ¶¶ 1-2.)  It is far from clear that sending a senior associate, presumably with between seven to eight years of legal work experience, to represent a criminal defendant at sentencing, constitutes ineffective assistance of counsel.  Nor does the transcript from the sentencing hearing support the Motion's portrayal of Ms. Cappellino as an ineffectual, inexperienced lawyer.  Likewise, Ms. Cappellino's decision not to seek a continuance of sentencing in order to review the anonymous letters does not necessarily fall below an objective standard of reasonableness, particularly where the government stated that the letters did not present sentencing issues based on further investigation.

Even though Mr. Braun has satisfied the first prong due to sentencing counsel's failure to monitor the docket for a period prior to sentencing, for the reasons set forth below, the defendant's Motion fails.

## II.  **The Second *Strickland* Prong Is Not Met**

It is well-settled that the district court has discretion to decide whether or not to grant a departure from the Guidelines and/or the statutory mandatory minimum, ███████  ████████  *See generally United States v. Fernandez*, 127 F.3d 277, 286 (2d Cir. 1997); *United States v. Huerta*, 878 F.2d 89, 92 (2d Cir. 1989); ███████████████████████

███████████████████████████████

[black redaction bars]

To be sure, Mr. Braun does not
and cannot dispute that the district court had discretion to
decide whether or not to depart from the substantial Guidelines
sentence of 324 to 405 months and the relevant statutory
mandatory minimum.

Nevertheless, Mr. Braun asserts that sentencing
counsel's "deficient performance. . . fueled a sentence based
on materially false information, violating Braun's Fifth and
Sixth amendment rights to due process and effective assistance
of counsel." (Mot. 3.) Mr. Braun further asserts that
*Strickland*'s prejudice prong has been met because sentencing
counsel's "lapses cost [defendant] a chance to impugn [the
letters'] accuracy," and as a result, "the Court based Braun's
sentence partly on materially false information, denying him due
process." (Mot. 14.) Thus, Mr. Braun requests "a fresh
sentencing hearing – to rebut the factual assumptions relied on
by the judge." (Mot. 15 (quoting *United States v. Doe*, Nos. 17-
CR-1814, 17-CR-1868, 2019 WL 4251878, at *3. *United States v.
Doe*, which Mr. Braun cites in the Motion, is inapplicable to the
present Motion. In that case, the Second Circuit stated that a

judge's reliance on "inaccurate, material information is reviewable under [18 U.S.C.] § 3742(a)(1) because 'a judge's material misapprehension of fact is ground for vacating a sentence[.]" *United States v. Doe*, Nos. 17-CR-1814, 17-CR-1868, 2019 WL 4251878, at *3.

Critically, however, Mr. Braun has failed to establish that the court *imposed a higher sentence than it otherwise would have*, but for sentencing counsel's deficient performance. As noted above, sentencing counsel *specifically requested* a 10-year sentence of imprisonment, *i.e.* the statutory minimum, or any downward departure from the Guidelines. (ECF No. 136, Def. Sent. Mem. 1, 5.) Although sentencing counsel submitted its sentencing memorandum prior to the ████████████████████ ████████, that in no way negates the fact that the court actually imposed a sentence equal to what defendant had requested – a sentence that fell far below the Guidelines range of 324 to 405 months. In any event, there can be no doubt that defendant was fully aware that his counsel had requested a 10-year sentence and that the court had the authority to impose the mandatory minimum sentence. (ECF No. 39, Plea Tr. 20-21; Plea Agmt. ¶ 6.)

As the court indicated at sentencing, the court had considered a wide array of documents and factors to inform its sentencing decision, including the superseding indictment; the

24

transcript of the plea hearing on November 3, 2011; the preliminary order of forfeiture; the February 28, 2018 PSR and Probation Department's Sentencing Recommendation; the July 24, 2018 Addendum to the PSR; Mr. Braun's sentencing memorandum and the numerous attached letters of support; the government's sentencing memorandum; as well as the anonymous letters in question.  (ECF No. 174-4, Ex. C, Sentencing Tr. 3.)  The court also reviewed Mr. Braun's offenses in the context of the Guidelines calculations and factors pursuant to 18 U.S.C. § 3553(a)(1)-(7), noting that Mr. Braun used threats and violence, including traveling across the country to physically whip and threaten a member of the drug trafficking organization, during the course of his criminal conduct; used aircraft to import or export the controlled substance; used other sophisticated means to smuggle drugs into the United States, including a Native American reservation, motor vehicles with hidden compartments, and boats; and was an organizer or leader of criminal activity that involved five or more participants.  (*Id*. at 16-20.)

          In addition to giving respectful consideration to the advisory Guidelines, the court considered the factors set forth under 18 U.S.C. § 3553(a)(1)-(7).  For example, the court considered the nature and circumstances of Mr. Braun's offense, which it found to be very serious, given the quantity of trafficked drugs, laundered funds, sophisticated means, and use

of violence and threats. (*Id.* at 26-33; 18 U.S.C. §
3553(a)(1).) The court also carefully considered Mr. Braun's
personal characteristics, family history, and circumstances.
(*Id.* at 29-33.) In summary, the court considered a vast array
of information, policy statements, and sentencing factors that
collectively informed the court's ultimate sentencing decision.
Contrary to what defendant has asserted in the Motion, the court
did not impose a heavier sentence in reliance upon the anonymous
allegations concerning Mr. Braun's conduct post-arrest. Nor was
it improper for the court to address those allegations for the
purpose of confirming that the government had investigated and
did not intend to invoke measures under its agreement with the
defendant or present evidence in a *Fatico* hearing regarding
those allegations.

In asserting that "prejudice [was] wrought by
counsels' derelictions," Mr. Braun posits that his 10-year
sentence "vastly exceeds those imposed on both his guilty-
pleading marijuana codefendants," Jeremy Fistel and Elbi
Cespedes, as well as sentences of "nearly all the defendants" in
a trio of related cases. (Mot. 15-16.) Mr. Braun, however, is
not similarly situated to many other drug traffickers. As the
court stated during sentencing, Mr. Braun was, at one point
during the conspiracy, routinely trafficking more than $6
million worth of marijuana per week, and the government

calculated that he was personally responsible for laundering roughly $14 million in drug proceeds – far more than the typical drug offender.  (ECF No. 174-4, Ex. C, Sentencing Tr. 28-29.) Furthermore, Mr. Braun's used threats and actual violence to collect drug debts and deter fellow co-conspirators from cooperating with the government, including traveling across the country and whipping an individual with a belt.  (*Id*. at 29.) Also, as discussed above, the court found that Mr. Braun acted as a leader and organizer of the vast conspiracy that involved individuals in other countries.  (*Id*. at 16-20.)  Though Mr. Braun states that the "operation's sophistication and scale" and his "leadership role" are already factored into the advisory Guidelines, and it may be the case that violence is not uncommon in the world of drug trafficking, the court acted to fulfill its duty to consider these facts for purposes of sentencing.  (Mot. 18.)

Mr. Braun further asserts that his 10-year sentence "dwarfs" the national median ██████████████████████ ████████████████████████████████████████████ ████████████████  "confound[s]" the 18 U.S.C. § 3553(a)(6), which directs courts to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  (Mot. 16.)

This assertion is plainly without merit. ████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ the mean downward departure from

the Guidelines range was **59 months,** and the median downward

departure was **47 months.**[5]  Of course, comparing Mr. Braun's case

to the cumulative data may be inapt, as these data unfortunately

do not separate out downward departures based on the applicable

Guidelines ranges.  Nevertheless, the report is of some value to

the court, as it shows that courts in drug trafficking cases

███████████████████████ have imposed sentences reflecting

approximately a 50% reduction in sentence from the Guidelines.

Here, the court independently calculated Mr. Braun's Guidelines

range to be **between 324 months and 405 months,** given an offense

level of 41 and a Criminal History Category of I.  (ECF No. 174-

4, Ex. C, Sentencing Tr. 34.)  Neither party objected to the

court's Guideline calculation.  (*Id.*)  Therefore, Mr. Braun

received a massive downward departure of **204 months, or a 63%**

**reduction,** below the bottom end of the Guidelines range for his

offense level and Criminal History Category, which far exceeds

---

[5] ████████████████████████████████████████████████████

████████████████████████████████████████████████

both the mean and median downward departure in drug trafficking

cases ███████████████████████████████

The court applauds Mr. Braun's conduct ████

███████████████████, as described in the government's sentencing

letter.  According to the government's sentencing letter, Mr.

Braun ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████  Mr. Braun appears to have

"turned his life around" since the commission of the instant

offenses, but the facts set forth in the government's sentencing

letter do not negate or obviate the sentencing goals of

deterrence and punishment for the instant offenses.  (Def. Sent.

Mem. 2.)  Further, Mr. Braun does not dispute that his

sentencing submission requested a 10-year sentence, which he

received ███████████████████████████████████████

The court finds that Mr. Braun has not satisfied the

second prong under *Strickland* because he has not established a

"reasonable probability" of prejudice.  As noted above, a

"reasonable probability" of prejudice requires more than a mere

showing that the errors had "some conceivable effect on the

outcome of the proceeding."  *Strickland*, 466 U.S. at 693.

Because the court imposed a sentence that did not rely upon the

allegations contained in the anonymous letters at issue, a

resentencing would have no effect on Mr. Braun's sentence.

## CONCLUSION

For the foregoing reasons, the court respectfully denies Mr. Braun's Motion to vacate his sentence, as there is simply no valid basis under 28 U.S.C. § 2255 to do so. 28 U.S.C. § 2255(a); *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995); *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004).

Mr. Braun shall surrender to the custody of the Attorney General as previously ordered. Defense counsel shall

confirm that Mr. Braun has surrendered within two business days of his surrender.  The Clerk of Court is respectfully directed to enter judgment against defendant, denying his § 2255 Motion, and close the case.

**SO ORDERED.**

Dated: December 23, 2019
       Brooklyn, New York

_____/s/_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York
