# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Fl., Brooklyn, NY
11201 Tel: (718) 330-1200 Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director and
Attorney-in-Chief*

Michelle A. Gelernt
*Attorney-in-Charge*

May 14, 2025

**Via ECF and Email**
Hon. Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, N.Y. 11201

Re: *United States v. Jonathan Braun,* 10- cr-433 (KAM)

Dear Judge Matsumoto:

I write in response to the government's letter, filed on May 12, 2025, regarding Mr. Braun's continued VOSR hearing, scheduled for May 15, 2025. The defense moves in advance of the continued hearing to 1) dismiss supplemental VOSR Counts Eight and Ten, filed against Mr. Braun under the Due Process Clause of the Fifth Amendment and Federal Rule of Criminal Procedure 32.1(b)(2)(A), and 2) exclude hearsay statements of Victim's 1 & 5 under the Due Process Clause of the Fifth Amendment and Federal Rule of Criminal Procedure 32.1(b)(2)(C).

### The Court Should Dismiss the Supplemental Charges Filed on May 15, 2025

The government writes that it intends to proceed on the additional VOSR charges, recently filed, and not yet arraigned, at the May 15, 2025, hearing. In a footnote, the government notes "Unless the defendant intends to present testimony related to the charges in the VOSR Addendum, the defendant's request (see Docket Entry No. 231) for a "potential date for a full hearing" does not appear necessary, as the government does not intend to present witness testimony in connection with those charges." ECF No. 232. This statement is concerning for several reasons.

**A. Count Eight Should Be Dismissed for Failure to Provide Notice**

A defendant's right to full and fair notice of the charges being brought against him is fundamental to our system of justice. *See* U.S. Const. amend. V. This includes written notice of violations of federal supervised release. Fed.R.Crim.P. 32.1(b)(2)(A); *United States v. McNeil,* 415 F.3d 273, 276 (2d Cir.2005) ("Due Process requires that a defendant receive written

1

notice of the charges against him before his release is revoked."); *United States v. Chatelain,* 360 F.3d 114, 121 (2d Cir.2004) (same); *see also Black v. Romano,* 471 U.S. 606, 612 (1985) (noting that a probationer "is entitled to written notice of the claimed violations of his probation"); *United States v. Sanchez,* 225 F.3d 172, 175 (2d Cir. 2000) ("This Court considers the constitutional protections for revocation of supervised release to be the same as those afforded for revocation of parole or probation."). A charging petition is adequate only if "it identifies the no-further-crime condition as the condition allegedly violated, *identifies the crime allegedly committed*, and contains a description of the basic facts underlying the new criminal charge, including the approximate dates of the events, the location at which they occurred, and the individuals involved." *Chatelain*, 360 F.3d at 121 (emphasis added).

Count Eight of the supplemental VOSR, dated May 1, 2025[1], now charges that Mr. Braun "committed the crime of Sexual Abuse in the First Degree, in violation of New York State Penal Law Section 130.65, a class D felony." VOSR Supp. at 2. In their May 12, 2025, letter the government states that "at the revocation hearing that took place on April 10 and April 11, the government proved by a preponderance of the evidence…Charge 6 (Forcible Touching) and Charge 8 (Sexual Abuse in the First Degree)." ECF 232. It appears that the government believes that they can rely on evidence previously taken to bring new, heightened charges in an effort to enhance Mr. Braun's sentencing exposure.[2] The Court should see this for the clear violation of constitutional and statutory law it is and dismiss Count Eight.

---

[1] It should be noted that the Supplemental VOSR is dated May 1, 2025, but counsel for Mr. Braun was not informed that additional charges had been brought until after business hours on May 2, 2025, when the Court issued a bounce directing the parties to confer on an arraignment date. After receiving that bounce the government reached out and provided counsel a copy of the Supplemental VOSR. Probation did not send defense counsel a copy of the supplement until May 5, 2025.

[2] The Court should discount any argument by the government that Mr. Braun has not been prejudiced by the latent notice. First, it is factually untrue. Defense counsel would have cross examined the complainant in a vastly different manner, including confronting the witness over the specific allegations that Mr. Braun placed the complainant's hand on his genitals. Such a claim was made for the first time in 3500 materials produced by the government but was never alleged to the police or the Brooklyn District Attorney's Office. Counsel did not engage the complainant on this significant inconsistency as counsel had no notice at the time that this allegation would be the subject of elevated charges. Nor did counsel question the witness as to the circumstances surrounding this specific allegation. Counsel made this strategic decision because Mr. Braun was not defending charges of sexual abuse, but instead forcible touching related to contact with the complainant's breasts. Regardless, counsel need not show prejudice as this objection to notice is being made prior to Mr. Braun even being arraigned on these charges.

### B. Count Ten Should be Dismissed for Failure to Investigate Properly

Count Ten charges Mr. Braun with traveling out of state without permission from November 24, 2021, through November 27, 2021. The government contends that Mr. Braun traveled to Carolina, Puerto Rico without prior authorization from the Probation Department or the Court.

The defense recently obtained documentation from Mr. Braun's mother's email account, which was shared with her son in 2021, in which, by email, United States Probation Officer Charnice Perez gives Mr. Braun permission to travel to Puerto Rico from November 24, 2021, through November 29, 2021. *See* Exhibit A, attached.[3] It is concerning that these exculpatory emails were not provided in discovery to Mr. Braun, despite the fact that they are in the possession of Probation.

The defense requests that the Court dismiss Count Ten, or in the alternative, provide Mr. Braun a reasonable amount of time to prepare for a hearing where he can fly his mother to New York to testify regarding receipt and authenticity of the attached email.[4]

### The Court Should Disallow Hearsay Evidence As To Counts 1, 2, 3 [5]

Finally, the government has suggested that they may attempt to prove Counts 1 through 3, through the introduction of hearsay evidence. Mr. Braun objects to this evidence.

While the Confrontation Clause of the Sixth Amendment does not apply to supervised release revocation hearings, *see United States v. Aspinall*, 389 F.3d 332, 342-43 (2d Cir. 2004), the Federal Rules of Criminal Procedure provide that in such a hearing the judge must give the defendant "an opportunity ... to question any adverse witnesses, unless the judge determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). This requirement reflects that the "minimum requirements of due process" in a revocation hearing includes the right of the defendant to "confront and cross-examine adverse witnesses (unless the

---

[3] The defense requests to file a minimally redacted version of this exhibit because it contains the personal identifying information of individuals.

[4] Should this be necessary Mr. Braun also expects to call Amy Braun regarding restitution payments made in response to Count Nine. Further, the defense requests that the government make Officer Perez available to testify at a later date as it is the defense's understanding that the restitution payment schedule made in this case was approved by Officer Perez. Defense further requests all email communications be provided to counsel between Mr. Braun and any United States Probation Officer that are relevant to restitution payments. No such communications have been provided as of the filing of this letter.

[5] The government has not indicated that it intends to move forward on Count 5 with hearsay evidence. Should that change, the defense incorporates the following arguments as to Count 5 as well.

hearing officer specifically finds good cause for not allowing confrontation).” *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

A court need not perform a good-cause analysis with respect to a statement admissible under an exception to the hearsay rule. *United States v. Williams*, 443 F.3d 35, 45 (2d Cir. 2006). But “if the statement does not fall under such an exception, Rule 32.1 requires the court to determine whether good cause exists to deny the defendant the opportunity to confront the adverse witness.” *Id*. “In making that determination, the court must balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay.” *Id*. (citing *United States v. Chin*, 224 F.3d 121, 124 (2d Cir. 2000); *Aspinall*, 389 F.3d at 343-45).

“Good cause” is not established merely because a witness who is otherwise available simply prefers not to testify. *See United States v. Zentgraf*, 20 F.3d 906, 909-10 (8th Cir. 1994) (witness's statement to probation officer that he “would prefer not to” testify at revocation hearing because he did not want to be labeled a “snitch” did not establish “good cause” for depriving defendant of confrontation right). Nor is good cause established based on speculation that a witness might not want to testify or based on the fact that a victim does not wish to testify. *See United States v. Bernadel*, 228 Fed. Appx. 95, 96-97 (2d Cir. 2007). In general, absent the invocation of a specific testimonial privilege, a witness generally has no right to refuse to give testimony. *See, e.g., Piemonte v. United States*, 367 U.S. 556, 559 n.2 (1961) (“Every citizen of course owes to his society the duty of giving testimony to aid in the enforcement of the law.”) (citation omitted); *United States v. Oliver*, 626 F.2d 254, 261 (2d Cir. 1980) (an order from the court is essential to a declaration that a witness is “unavailable” to testify under Fed. R. Evid. 804(a)(2)).

The Second Circuit has faced the issue of whether hearsay is admissible in revocation hearings in several cases. While it has at times upheld the admission of hearsay, it has done so where there was much greater indicia of reliability and a stronger basis for excusing confrontation than is present here. *Compare Chin*, 224 F.3d at 124 (admitting hearsay where officer noted complaining witness bleeding from the mouth, missing a tooth, and holding a bloody tooth in her hand, all of which indicated that an assault had taken place); *United States v. Carthen*, 681 F.3d 94, 99 (2d Cir. 2012) (admitting hearsay where the probation officer had conducted six interviews of the complainant, and her testimony was corroborated by that of another victim and an injury observed by the probation officer); *United States v. Harris*, 838 F.3d 98, 108 (2d Cir. 2016) (admitting hearsay concerning a domestic assault, emphasizing the consistency of the complainant's account when given to an NYPD officer who responded to the complainant's 911 call, a detective who interviewed her two weeks later, and a U.S. Attorney's Office investigator who interviewed her six months after the incident) *with Bernadel*, 228 Fed. Appx at 97 (finding error for admission of hearsay where the District Court's failed to perform a good cause analysis and relying solely on the generic claim that a domestic violence victim did not want to testify).

The Court should disallow the hearsay the government proposes to use here because it lacks the indicia of reliability present in those cases where its admission has been upheld. In the

cases where the admission of hearsay has been upheld, the statements were typically corroborated by evidence that would be admissible at a trial. In *Carthen*, for example, the court noted that the complainant sought protection at a shelter, an action that was not hearsay and corroborated her account of the incident. *Carthen*, 681 F.3d at 100. In *Chin*, the injuries were so pronounced – the complainant was bleeding from the mouth and holding a bloody tooth in her hand when the police arrived – that there was little doubt an assault had just taken place. *Chin*, 224 F.3d at 124. Moreover, in *Carthen*, and *Harris*, the Second Circuit noted that the complainant had repeatedly provided consistent accounts over a period of time.

Here, the defense has only been provided the account of Victim-1 when he reports a crime at the police precinct. Based on the discovery, he has not been re-interviewed so his consistency has not been tested. Further, what he says on the bodycam provided is called into question both by the objective evidence and other witness testimony. The complainant alleges that he was punched in the face and that his son was shoved, resulting in a bruise on his son's body. However, the Court has already heard from Mr. Dizon, a government witness, who testified that he witnessed the entire interaction between the complainant and Mr. Braun. He testified that Mr. Braun tussled with the complainant, but did not testify that there was ever a punch. Further, he testified that Mr. Braun never touched the complainant's child. Moreover, the picture that the complainant provided to the police as "evidence" of the injury shows no mark or bruise. Based on these obvious inconsistencies, it would be troublesome for the Court to allow in the uncorroborated statements of the complainant without Mr. Braun having an opportunity to cross examine him.

Mr. Braun has a particularly great interest in confrontation here. First, his freedom is at stake. He also wishes to cross examine the complainant about why he stopped cooperating with law enforcement, how his actions may have precipitated the events in question, his possession of illegal drugs in Mr. Braun's home, his requests to be paid by Mr. Braun's family, and other factors bearing on his credibility. A defendant's need for confrontation concerning bias and other factors which bear on credibility is particularly great in a case where the parties involved have a prior relationship. As such, he has a compelling interest in confronting the witnesses against him.

Thank you for your time and consideration.

Respectfully Submitted,

*Kathryn Wozencroft*
Kathryn Wozencroft
Assistant Federal Defender
(347) 802-7800

cc: AUSA Tanya Hajjar
AUSA Rachel Bennek

Exhibit A

**From:** Charnice Perez
**Subject:** Re: Jonathan Braun
**Date:** Nov 2, 2021 at 5:39:25 AM
**To:** Amy Braun

Good morning,

Travel is approved.

Sent from my iPhone

> On Nov 1, 2021, at 1:27 PM, Amy Braun wrote:
>
> CAUTION - EXTERNAL:
>
> Hi please
> Let
> Me
> Know
> Thanks
> Jonathan Braun
>
> Sent from my iPhone
>
> Begin forwarded message:

From: Amy Braun █████████
Date: October 13, 2021 at 3:36:05 PM EDT
To: Charnice Perez █████████
Subject: Jonathan Braun

Here is the information for permission to travel to Puerto Rico for Thanks giving and first night Hanukkah to be with my parents Helene and Jacob Braun .
Thanks Jonathan Braun

[cid:F5E37FAB-8F8E-4812-BC94-9F34DCD173C9]

[cid:85BEDD2F-976C-4C55-8DA3-5819AF0B83DA]

[cid:78598933-A727-4AA0-A260-3BE5539BC1C7]

[cid:7BA22DDD-AD89-4EC6-BBFC-0F40BECF20E9]

[cid:6EC519BC-F44B-4642-8581-CB2BF1D02448]

Sent from my iPhone

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

From: Amy Braun
Subject: Jonathan Braun
Date: Oct 13, 2021 at 3:36:05 PM
To: Charnice Perez

Here is the information for permission to travel to Puerto Rico for Thanks giving and first night Hanukkah to be with my parents Helene and Jacob Braun .
Thanks Jonathan Braun

**Travel Request**

Date: 10/13/21
Pacts#

Based upon your current status, all requests to travel out of this District require approval by the Probation Department. International travel requires additional approval by the Sentencing Judge or Parole Commission.
Complete this form fully and accurately, and return it to your probation officer. All requests will be given due consideration.

NAME: Jonathan Braun

TELEPHONE: Home:
Cell:

DATES OF TRAVEL: 11/24 – 11/29
PURPOSE OF TRAVEL: Thanksgiving with my parents and 1st day Chanukah Holiday Sunday
OTHER TRAVEL COMPANIONS: My wife + 3 children
DESTINATION ADDRESS (include country): Ocean Blue Towers / Isla Verde 4 Calle Lirio Carolina P.R
TELEPHONE: 718-213-2188
NAME OF PARTY (AND RELATIONSHIP) TO BE VISITED: Helene + Jacob Braun / Parents





You can also manage your trips by **downloading our free mobile app.**

# Flights

## EWR ▸ SJU

Newark, NJ      San Juan, PR

**Terminal:** A

| | |
|---|---|
| **Date** | Wed, Nov 24 |
| **Departs** | 6:00pm |

| Arrives | 10:52pm |
|---|---|
| Flight | 689 |





## Traveler Details

**JONATHAN BRAUN**

**Frequent Flier:** [Add TrueBlue #](#)

**Ticket number:** 2792175215847

---

**EWR - SJU:**

**Fare:** Blue

**Carry-on bags:** One (1) carry-on bag and one (1) personal item included in your fare.

**Checked bags:** No checked bags included in your fare. You've added one (1). As a reminder, up to one (1) additional checked bag may be added in advance [here](#). If you need to check more than two bags, these can only be added at the ticket counter on your day of travel, and [other baggage restrictions may apply.](#)

**Seat:** Select seat

Seat: Select seat

## MIRIAM HURWITZ

Frequent Flier: Add TrueBlue #

Ticket number: 2792175215848

## EWR - SJU:

Fare: Blue

Carry-on bags: One (1) carry-on bag and one (1)



  
**Manage trip**

You can also manage your trips by downloading our free mobile app.

## Flights

# SJU ▸ EWR

San Juan, PR    Newark, NJ

**Terminal:** A

| | |
|---|---|
| **Date** | Mon, Nov 29 |
| **Departs** | 11:40am |
| **Arrives** | 2:48pm |
| **Flight** | 890 |

jetBlue



any JetBlue-operated flight. Same-day switches may be made without a fare difference for $75. Click here for details on our change and cancel policies.

## Traveler Details

**JONATHAN BRAUN**

**Frequent Flier:** Add TrueBlue #

**Ticket number:** 2792175399634

**SJU - EWR:**

**Fare:** Blue

**Carry-on bags:** One (1) carry-on bag and one (1) personal item included in your fare.

**Checked bags:** No checked bags included in your fare. As a reminder, up to two (2) checked bags may be added in advance here. If you need to check more than two bags, these can only be added at the ticket counter on your day of travel, and other baggage restrictions may apply.

**Seat:** Select seat

### MIRIAM HURWITZ

**Frequent Flier:** Add TrueBlue #

   

Sent from my iPhone