

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

TH/RAB  *271 Cadman Plaza East*
F. #2025R00212  *Brooklyn, New York 11201*

June 12, 2025

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Jonathan Braun
              Criminal Docket No. 10-433 (KAM)

Dear Judge Matsumoto:

      The government respectfully submits this letter in advance of the continuation of the revocation hearing scheduled for tomorrow to advise the Court that the government seeks to admit Government Exhibits 29, 30, and 31 as inconsistent statements of Victim-1, who testified before the Court on May 15, 2025.

      As the Court recalls, Victim-1 testified that on March 29, 2025, he and his family had an "altercation" with the defendant during which the defendant hit Victim-1 and chased him and his family out of the defendant's house. May 15 Hearing Transcript ("Tr.") 81-83. Although Victim-1 had previously reported to the Nassau County Police Department that the defendant had assaulted his three-year-old son, Victim-1 testified that he was "not sure" if the defendant had "any physical contact" with his son. Tr. 85. Victim-1 testified that his son at one point "fell" or "tripped." Tr. 85-87. The Court admitted Victim-1's statements to officers with the Nassau County Police Department as a prior inconsistent statement. Tr. at 93 (holding that Victim-1 made his statement to the police and was testifying inconsistently with that statement). After Victim-1's testimony, the Court asked Victim-1 if Victim-1 had "any contact with Mr. Braun or anyone in his family regarding this incident," to which Victim-1 responded, after a long pause, "No." Tr. 113. In response to additional questions from the Court, Victim-1 reiterated that he had no contact "from [the defendant's] family." Id.

      In response to a subsequent subpoena, Victim-1 provided the government with certain communications between Victim-1 and other third parties after the assault, three of which the government seeks to admit into evidence as prior inconsistent statements of Victim-1. See GX29-31. These include a video of a telephone conversation between Victim-1 and Justin Dizon, the defendant's butler who testified on April 10, 2025 (GX29); a video of a conversation between Victim-1 and an employee of the defendant (GX30); and electronic communications between Victim-1 and the defendant's mother (GX31).

As reflected in Government Exhibit 29, on March 29, 2025, Victim-1 told Dizon that the defendant "hit [Victim-1] in the face" and "hit [his] son also," to which Dizon stated, "I know, bro." When Dizon stated that he (Dizon) had not seen the defendant hit Victim-1's son, Victim-1 stated that it took place "[o]utside, when we were leaving the house" and that his son was "all red" and "hurting." And, as reflected in Government Exhibit 30, Victim-1 told an employee of the defendant that it was not "safe" for her to go to work at the defendant's home because the defendant "attacked me today and he attacked my son."

Government Exhibit 31 contains WhatsApp communications between Victim-1 and the defendant's mother, including the following messages, in which Victim-1 reported an attack on his child and the defendant's mother directed Victim-1 not to call the police and indicated that he "will be paid more":



Victim-1 continued to communicate with the defendant's mother after this date. On March 30, 2025, Victim-1 sent the following message to the defendant's mother: "I'm still waiting for your call[.] You told me yesterday that your [sic] going to call me and I'm waiting[.]" On March 31, 2025, the defendant's mother attempted to place a call to Victim-1. On April 6, Victim-1 sent a message to the defendant's mother stating that it seemed she hadn't received his "message" and

2

that he hadn't "received the payment for the last month for the work that was done. . . . I was working this past month for you and haven't received the payment you said you were sending." On May 13, 2025, two days before his testimony in this matter, the defendant placed three apparently unanswered calls to the defendant's mother.

The government respectfully submits that Government Exhibits 29, 30, and 31 are inconsistent with Victim-1's testimony and should be admitted. See United States v. Agajanian, 852 F.2d 56, 58 (2d Cir. 1988) (affirming admission of taped telephone conversation between a witness and a third party as a prior inconsistent statement in order to impeach the witness's credibility and noting that statements need not be "diametrically opposed" to be inconsistent.). Victim-1 was served with a subpoena and the government understands that he will be present at the hearing tomorrow.

At the last hearing, the Court indicated that it wished to hear from Victim-1's wife, whose first name is Sara, since Victim-1 testified that Sara told him how his child was injured. See Tr. 105. Sara was served with a subpoena through counsel and has indicated that she will be present at the hearing tomorrow. The government has also interviewed Sara. See 3500-SN-1A (report of interview). The government has significant concerns about Sara's credibility and at this time, the government cannot, consistent with its professional obligations, call Sara as a witness.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/_____
Tanya Hajjar
Rachel Bennek
Assistant U.S. Attorneys
718-254-7000

cc: Kathryn Wozencroft, Esq. (by email and ECF)
U.S. Probation Officer Heather Clark (by email)